**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br>    Plaintiff, | CIVIL ACTION NO: 20-cv-652 |
| v. | COMPLAINT FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER ANCILLARY AND EQUITABLE RELIEF |
| FINTECH INVESTMENT GROUP, INC.,<br>COMPCOIN LLC and ALAN FRIEDLAND,<br>    Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

## I. SUMMARY

1.      From at least 2016 through 2018 (the "Relevant Period"), Defendant Alan Friedland ("Friedland") and the companies he controlled, Defendant Fintech Investment Group, Inc. ("Fintech") and Defendant Compcoin LLC ("Compcoin LLC") (collectively "Defendants"), fraudulently solicited customers and prospective customers to purchase the digital asset known as Compcoin ("Compcoin"), falsely promising that Compcoin would allow customers to gain access to Fintech's allegedly proprietary foreign exchange ("forex") trading algorithm known as ART and falsely advertising that ART would deliver high rates of return.

2.      In marketing Compcoin, Defendants made untrue and materially misleading representations about the use and primary function of Compcoin and the performance of ART.

3.      Significantly, despite Defendants' knowledge that no customer could lawfully utilize ART unless and until Defendants obtained approval of their risk disclosures from the National Futures Association ("NFA") to solicit customers as required by CFTC Regulations and NFA rules, Defendants sold Compcoin and raised over $1.6 million on the premise that

ART "was ready for release on the open market" and that "ART's high success rate at predicting USD/EUR [i.e., U.S. dollar/euro] forex trades, coupled with the high rate of return from these trades, will stimulate demand among investors and forex traders to purchase and use Compcoin- specifically to gain access to ART."

4.      Instead of gaining access to ART's high success rate at predicting USD/EUR forex trades and high rate of return from the trades as promised, purchasers of Compcoin were left with a valueless asset.  The NFA never approved Fintech's risk disclosure statements.  The purchasers of Compcoin never gained access to ART.  Indeed, Compcoin was eventually delisted by all digital asset exchanges and is now worthless.

5.      Defendants solicited customers to purchase Compcoin through various means, including a website, written solicitation materials, and verbal communications, that (i) falsely represented the use and function of Compcoin, (ii) falsely claimed that Compcoin would grant customers access to a forex trading algorithm called ART developed by Fintech, (iii) failed to disclose that Fintech was not approved to advise customers on trading forex using ART and could not trade forex for customers using ART until and unless it was approved to do such trading, and (iv) failed to include a disclosure, as required by CFTC Regulation, that Fintech and ART's forex performance results were based largely or entirely on simulated or hypothetical performance and not actual trading results.

6.      Through this fraudulent marketing and solicitation of ART, Defendants Fintech and Friedland have engaged, are engaging, or are about to engage in acts and practices which violate the Commodity Exchange Act ("Act"), including Sections 4b(a)(2)(A)-(C), 4$o$(1)(A), 4$o$(1)(B), and 6(c) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6$o$(1)(A), (B), 9(1) (2018) and Commission Regulations ("Regulations") 4.41(a) and (b), 5.2(b)(1)-(3), and 180.1, 17 C.F.R.

§§ 4.41(a), (b), 5.2(b)(1)-(3), 180.1 (2019), and Defendant Compcoin LLC has engaged, is engaging, or is about to engage in acts and practices which violate the Act and Regulations, including 7 U.S.C. §§ 4b(a)(2)(A)-(C) and 9(1) and 17 C.F.R. §§ 180.1, 4.41(b), and 5.2(b)(1)-(3), and aiding and abetting Defendants Fintech's and Friedland's violations of 7 U.S.C. §§ 6o(1)(A) and (B), and 17 C.F.R. § 4.41(a).

7.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, or in similar acts and practices. Accordingly, the CFTC brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-l (2018), to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and the Regulations. In addition, the Commission seeks restitution, civil monetary penalties, permanent trading and registration bans, and such other statutory, injunctive, or equitable relief as this Court may deem necessary and appropriate.

## II.     JURISDICTION AND VENUE

8.     <u>Jurisdiction</u>. This Court possesses jurisdiction over this action under 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act in the proper district court of the United States whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule,

regulation, or order thereunder.  The Commission has jurisdiction over the forex solicitations and transactions at issue pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2018).

9.     Venue.  Venue lies properly in this District pursuant to 7 U.S.C. § 13a-1(e), because Defendants transacted business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred within this District.

### III.    THE PARTIES

10.    Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and the Regulations promulgated thereunder.  The Commission maintains its principal office at 1155 21st Street NW, Washington, DC 20581.

11.    Defendant Alan Friedland is the founder and sole owner of Fintech and Compcoin LLC.  During the Relevant Period, Friedland controlled and directed the activities of Fintech and Compcoin LLC.  Friedland was an officer, employee, and agent of Fintech, and in those capacities he solicited Fintech customers' and prospective customers' discretionary accounts.  Upon information and belief, Friedland currently resides in or around Winter Park and/or Orlando, Florida.  Friedland is the listed Principal of Fintech and is registered with the Commission as an associated person thereof.

12.    Defendant Fintech Investment Group, Inc. was a Florida company during the Relevant Period and used as a mailing address 100 E. New York Ave, Suite 330, Deland, FL 32724.  Fintech was established as a corporation on March 29, 2016, and was dissolved on September 27, 2019.  At all times since 2016, Fintech has been registered with the Commission as a commodity trading advisor.

13.     Defendant Compcoin LLC was a Florida limited liability company during the Relevant Period and used as a mailing address 100 E. New York Ave, Suite 335, Deland, FL 32724.  Compcoin LLC was formed as a limited liability company on June 4, 2015, and dissolved on September 27, 2019.  Compcoin LLC has never been registered with the Commission.

## IV.     STATUTORY AND REGULATORY BACKGROUND

### A.     Forex Fraud

14.     Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2018), in part, makes it unlawful for any person to: (A) cheat or defraud or attempt to cheat or defraud another person, (B) willfully make a false report or statement to another person, or (C) willfully deceive or attempt to deceive another person by any means whatsoever in connection with a contract of sale of a commodity for future delivery.

15.     Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2018), makes retail forex subject to Section 4b of the Act "as if the agreement, contract, or transaction were a contract of sale of a commodity for future delivery."

16.     Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(l)-(3) (2019), makes it unlawful for any person, by use of the mails or any means or instrumentality of interstate commerce, to: (1) cheat or defraud or attempt to cheat or defraud another person, (2) willfully make a false report or statement to another person, or (3) willfully deceive or attempt to deceive another person by any means whatsoever in connection with any forex transaction.

**B.      Fraud by a Commodity Trading Advisor**

17.      Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2018), provides that it shall be

unlawful for a commodity trading advisor ("CTA")[1] or an associated person of a CTA, by use

of the mails or any means or instrumentality of interstate commerce, directly or indirectly:  (A)

to employ any device, scheme, or artifice to defraud any client or participant or prospective

client or participant; or (B) to engage in any transaction, practice, or course of business which

operates as a fraud or deceit upon any client or participant or prospective client or participant.

18.      Pursuant to Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii)(I)

(2018), "agreements, contracts, or transactions described in [Section 2(c)(2)(C)(i) of the Act],"

including retail forex transactions offered on a margined or leveraged basis to persons who are

not eligible contract participants, "shall be subject to" provisions including Section 4*o*(1) of the

Act, 7 U.S.C. § 6*o*(1).

19.      Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2019), provides, in relevant part, that no

CTA, or principal of a CTA, may advertise in a manner which: (A) employs any device, scheme

or artifice to defraud any participant or client or prospective participant or client; or

(B) involves any transaction, practice or course of business which operates as a fraud or deceit

upon any participant or client or any prospective participant or client.

20.      Regulation 4.41(b), 17 C.F.R. § 4.41(b) (2019), provides that no person may

present the performance of any simulated or hypothetical commodity interest account,

transaction in a commodity interest or series of transactions in a commodity interest of a CTA,

or any principal thereof, unless such performance is accompanied by the following statement:

---

[1] A CTA is a person who, for compensation or profit, engages in the business of advising others about trading commodities, including retail forex on a margined or leveraged basis. *See* 7 U.S.C. § 1a(12) (2018).  The Act defines a CTA as including a person who is registered with the Commission as a CTA. *Id.* § 1a(12)(A)(iii).

These results are based on simulated or hypothetical performance results that have certain inherent limitations. Unlike the results shown in an actual performance record, these results do not represent actual trading. Also, because these trades have not actually been executed, these results may have under-or over-compensated for the impact, if any, of certain market factors, such as lack of liquidity. Simulated or hypothetical trading programs in general are also subject to the fact that they are designed with the benefit of hindsight. No representation is being made that any account will or is likely to achieve profits or losses similar to these being shown.

**C.      Other Anti-Fraud Statutes and Regulations under the Act**

21.    Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, or contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate.

22.    Regulation 180.1, 17 C.F.R. § 180.1 (2019), provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (A) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (B) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (C) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person. This provision was promulgated pursuant to 7 U.S.C. § 9(1).

23.    Pursuant to Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii)(I) (2018), "agreements, contracts, or transactions described in [Section 2(c)(2)(C)(i) of the Act],"

including retail forex transactions offered on a margined or leveraged basis to persons who are not eligible contract participants, "shall be subject to" provisions including Section 6(c)(1) of the Act, 7 U.S.C. § 9(1).

**D.    Aiding and Abetting under the Act**

24.    Section 13(a) of the Act, 7 U.S.C. § 13c(a) (2018), provides that "any person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any provisions of this Act . . . may be held responsible for such violation as a principal."

## V.    FACTS

**A.    Defendants' Forex Solicitations and Representations**

25.    Defendants marketed Compcoin as "[a]n incentivized blockchain-based Financial Investment Coin" by which "Compcoin owners will measure its value through the performance (actual and perceived future sustainability) of its automated, algorithmic trading platform," known as ART.

26.    In order for Defendants' customers to gain access to ART, customers were required to first purchase Compcoin. Customers could purchase Compcoin directly from other purchasers of Compcoin through an authorized digital asset exchange, or—as was the case for many Compcoin holders—directly from Compcoin LLC, an affiliate of Fintech which was wholly owned by Friedland. Customers were then supposed to hold Compcoin at an address specified by Fintech on the public Compcoin blockchain. According to Fintech, once it confirmed that the customer posted Compcoin to the designated address on the blockchain, Fintech would then trade the customer's individual forex account using ART. This never happened.

27.    Defendants solicited customers to purchase Compcoin through various means, including a white paper posted to Compcoin LLC's website, other statements on the website, written solicitation materials, paid press releases, and verbal communications.

28.    Defendants' white paper was replete with statements such as the following:

(a)    Compcoin could be used as "tokens" to gain access to "sophisticated, A.I.-enhanced trading technologies."

(b)    "[T]he primary function of Compcoin is to grant investors access to ART – a proprietary, automated, algorithmic foreign currency exchange (forex) trading platform developed by Fintech Investment Group" that is "complete in form and function."

(c)    After more than eight years of testing, ART "is likely to deliver a return on investment (ROI).  As such, Compcoin's founders felt the technology was ready for release on the open market."

(d)    "ART's high success rate at predicting USD/EUR [i.e., U.S. dollar/euro] forex trades, coupled with the high rate of return from these trades, will stimulate demand among investors and forex traders to purchase and use Compcoin- specifically to gain access to ART."

(e)    "In eight years of controlled lab testing, Compcoin delivered an average 10%* quarterly return on investment (ROI) – much higher than the ROI of most retail and institutional forex traders."  The asterisk referred to a footnote, which in smaller print, read "*NOTE Preliminary performance results were primarily achieved in a controlled environment using historical

trading data measured against actual forex trading results.  It is important to

note past results are not an indicator of future performance."

29.     Further, in or about June 2017, in a press release paid for by Compcoin LLC,

Friedland, as the founder of Fintech and Compcoin LLC, was quoted as representing that

"[a]fter eight years of testing, which resulted in highly successful predictions and high returns,

we believe Compcoin is ready to generate profits for forex traders on the open market."

30.     Defendants solicited customers to utilize ART in connection with retail forex

trading on a margined or leveraged basis, listing on the Compcoin LLC website various forex

trading platforms that were compatible with the ART technology and including the amount of

leverage that could be utilized in trading on each platform.

31.     Defendants solicited customers who were not eligible contract participants, as

that term is defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2018).

32.     During the Relevant Period, Defendants sold Compcoin to hundreds of

customers through Defendant Compcoin LLC raising over $1.6 million.

**B.     Defendants' Fraud**

33.     Defendants' solicitation representations, set forth above, were untrue and

materially misleading.  Defendants made these false and misleading representations of material

fact knowingly or recklessly in that they knew that these statements were false or misleading.

34.     Prior to the purchase of Compcoin by anyone, Defendants knew that Compcoin

could not be used by customers to gain access to ART because Fintech had not been approved

to advise customers as to trading forex using ART.

35.     Further, Defendants knew that the performance of ART which was included in

Defendants' solicitations was based largely or entirely on hypothetical performance results, not

10

real trading, and further knew that the solicitations did not contain the language set out in Regulation 4.41(b), 17 C.F.R. § 4.41(b) (2019).

36.     Defendants also knew that ART could not lawfully automatically manage any customer accounts because Defendants knew before Fintech could lawfully offer ART to purchasers of Compcoin, Fintech was required to seek and obtain the approval of its risk disclosure documents from the NFA.  This approval never happened.  Defendants offered Compcoin prior to Fintech seeking NFA approval of its disclosure documents, and Fintech never obtained NFA approval of the disclosure documents.

37.     Compcoin LLC's website did not contain an NFA approved risk disclosure statement for ART because the NFA never approved Fintech's risk disclosure documents for ART.

38.     Regulation 4.36, 17 C.F.R. § 4.36 (2019), requires that a CTA "must electronically file with the National Futures Association, pursuant to the electronic filing procedures of the National Futures Association, the Disclosure Document for each trading program that it offers or intends to offer not less than 21 calendar days prior to the date the trading advisor intends to deliver the Document to a prospective client in the trading program." In practice, this Regulation allows the NFA to review the solicitation and require the CTA to make any necessary changes prior to solicitation.  It also affords the NFA with the opportunity to reject inadequate disclosures in advance of any solicitation and withhold approval of a Disclosure Document that does not conform with the NFA Rules or CFTC Regulations.  The NFA's website makes clear to all CTAs and prospective CTAs that a Disclosure Document may not be used unless and until the CTA receives an acceptance letter.

39.     Defendants knew that Compcoin could not lawfully be used by customers to trade forex with ART unless and until the NFA approved the disclosure statement by issuing an acceptance letter.

40.      From approximately September 2017 to May 2018, the NFA advised Defendant Fintech in writing that the forex trading disclosure documents, which Fintech had submitted to the NFA for approval, were deficient and could not be used to solicit customers for forex trading using ART until acceptable disclosures were filed with, approved and accepted by the NFA.  Defendant Fintech was advised in writing that soliciting customers with disclosures that were not accepted by the NFA "will result in violations of NFA Rules and CFTC Regulations and could subject the firm to possible disciplinary action."

41.     The NFA never issued an acceptance letter.

42.     Moreover, although Defendants touted the successful performance of ART through the Compcoin LLC website and in advertising materials, Defendants knew that Compcoin LLC's website, which was used to solicit customers, did not contain the required disclosure statement set forth in 17 C.F.R § 4.41(b) for simulated or hypothetical performance.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### Count I

**Violations of Section 4b(a)(2)(A)-(C) of the Act,
7 U.S.C. § 6b(a)(2)(A)-(C) (2018),
and Regulation 5.2(b)(1)-(3),
17 C.F.R. § 5.2(b)(1)-(3) (2019)
(Forex Fraud)
(Fintech, Friedland and Compcoin LLC)**

43.     The allegations set forth in paragraphs 1 through 42 are re-alleged and incorporated herein by reference.

44.    7 U.S.C. § 6b(a)(2)(A)-(C) makes it unlawful:

for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market--

(A) to cheat or defraud or attempt to cheat or defraud the other person;

(B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record;

(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person[.]

45.    17 C.F.R. § 5.2(b) provides, in relevant part, that:

[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:

(1) To cheat or defraud or attempt to cheat or defraud any person;

(2) Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or

(3) Willfully to deceive or attempt to deceive any person by any means whatsoever.

46.    Defendants, in connection with retail forex transactions, knowingly or

recklessly: cheated or defrauded or attempted to cheat or defraud customers and prospective

customers and deceived or attempted to deceive customers and prospective customers by, among other things, fraudulently soliciting customers and prospective customers to purchase Compcoin, falsely promising that Compcoin would allow customers to gain access to ART, falsely advertising that ART would deliver high rates of return and failing to include the required disclosure that Fintech and ART's forex trading performance results were largely or entirely based on simulated or hypothetical performance and not actual trading results as required by the relevant Regulation.

47.     By reason of the foregoing, Defendants violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

48.     Each misrepresentation, omission of material fact, and false statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

## Count II

**Violations of Section 4*o*(1)(A) and (B) of the Act,
7 U.S.C. § 6*o*(1)(A)–(B) (2018)
(Fraud by a Commodity Trading Advisor)
(Fintech and Friedland)**

49.     Paragraphs 1 through 48 are re-alleged and incorporated herein by reference.

50.     7 U.S.C. § 6*o*(1)(A) and (B) make it unlawful for a CTA or associated person of a CTA "by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly- (A) to employ any device, scheme or artifice to defraud any client or . . . prospective client . . . ; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client…or prospective client."

51.     During the Relevant Period, Fintech was a registered CTA and Friedland acted as an associated person of Fintech because he was associated with Fintech as "a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves . . .  [t]he solicitation of a client's or prospective client's discretionary account," as set out in Regulation 1.3, 17 C.F.R. § 1.3 (2019).

52.     During the Relevant Period, Defendants Friedland and Fintech, through use of the mails or other means or instrumentalities of interstate commerce, including the Compcoin LLC website, employed a device, scheme or artifice to defraud their customers and prospective customers and engaged in a transaction, practice or course of business which operated as a fraud upon their customers and prospective customers by, among other things, fraudulently soliciting customers and prospective customers to purchase Compcoin, falsely promising that Compcoin would allow customers to gain access to ART, falsely advertising that ART would deliver high rates of return and failing to include the required disclosure that Fintech and ART's forex trading performance results were largely or entirely based on simulated or hypothetical performance and not actual trading results as required by the relevant Regulation.

53.     Each fraudulent or deceptive act and each misrepresentation or omission of a material fact, during the Relevant Period, including without limitation those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6$o$(1)(A) and (B).

## Count III

**Aiding and Abetting Violations of Section 4$o$(1)(A) and (B) of the Act,**
**7 U.S.C. § 6$o$(1)(A)-(B) (2018)**
**(Fraud by a Commodity Trading Advisor)**
**(Compcoin LLC)**

54.     Paragraphs 1 through 53 are re-alleged and incorporated herein by reference.

55.     7 U.S.C. § 6*o*(1)(A) and (B) makes it unlawful for a CTA or associated person of a CTA "by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly- (A) to employ any device, scheme or artifice to defraud any client or . . . prospective client . . . ; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client . . . or prospective client."

56.     By reason of the conduct described above, Compcoin LLC willfully aided, abetted, counseled, commanded, induced, or procured the commission of the acts constituting violations of 7 U.S.C. § 6*o*(1)(A) and (B) of the Act committed by Fintech and Friedland or acted in combination or concert with Fintech and Friedland in such violations, and Compcoin LLC sought by its actions to make Fintech's and Freedland's violations succeed.  Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a) (2018), Compcoin LLC is therefore responsible as if it was a principal for Fintech's and Friedland's violations of 7 U.S.C. § 6*o*(1)(A) and (B) during the Relevant Period.

57.     Each and every instance during the Relevant Period that Fintech and Friedland violated 7 U.S.C. § 6*o*(1)(A) and (B) constitutes a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A) and (B) for which Compcoin LLC is responsible as if it was a principal under 7 U.S.C. § 13c(a).

### Count IV

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018),
and Regulation 180.1, 17 C.F.R. § 180.1 (2019)
(Fraud)
(Fintech, Friedland and Compcoin LLC)**

58.     Paragraphs 1 through 57 are re-alleged and incorporated herein by reference.

16

59.    7 U.S.C. § 9(1) makes it unlawful for any person, directly or indirectly, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, to use or employ, or attempt to use or employ, any manipulative or deceptive device or contrivance.

60.    17 C.F.R. § 180.1 provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (A) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (B) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (C) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

61.    Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii)(I) (2018), provides that "agreements, contracts, or transactions described in [7 U.S.C. § 2(c)(2)(C)(i)]," including retail forex on a margined or leveraged basis offered to persons who are not eligible contract participants, "shall be subject to" provisions including 7 U.S.C. § 9(1).

62.    Defendants, directly or indirectly, in connection with retail forex offered on a margined or leveraged basis to people who are not eligible contract participants, intentionally or recklessly:  (1) used or employed, or attempted to use or employ, manipulative devices, schemes, or artifices to defraud; (2) made, or attempted to make, untrue or misleading statements of a material fact or omitted to state material facts necessary in order to make the statements made not untrue or misleading; or (3) engaged, or attempted to engage, in acts,

17

practices, or courses of business, which operated or would have operated as a fraud or deceit upon customers or prospective customers.

63.    Defendants made false and misleading misrepresentations of material fact, including but not limited to: falsely promising that Compcoin would allow customers to gain access to ART, misrepresenting the performance of ART, falsely advertising that ART would deliver high rates of return and failing to include a disclosure that Fintech and ART's forex trading performance results were largely or entirely based on simulated or hypothetical performance and not actual trading results as required by the relevant Regulation.

64.    Each fraudulent or deceptive act and each misrepresentation or omission of a material fact,  made during the relevant time period, including without limitation those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1.

### Count V

**Violations of Commission Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2019)**
**(False Advertising)**
**(Fintech and Friedland)**

65.    Paragraphs 1 through 64 are re-alleged and incorporated herein by reference.

66.    17 C.F.R § 4.41(a) prohibits CTAs or any principal of a CTA from advertising in a manner which employs any device, scheme or artifice to defraud any participant or client or prospective participant or client or involves any transaction, practice or course of business which operates as a fraud or deceit upon any participant or client or prospective participant or client.

67.    During the relevant period, Defendants Fintech and Friedland advertised the ART forex trading system on the Compcoin LLC website and social media sites, among other

places, to solicit customers in a manner that employed a device, scheme or artifice to defraud customers and prospective customers and engaged in a transaction, practice or course of business which operated as a fraud upon their customers and prospective customers by, among other things, falsely promising that Compcoin would allow customers to gain access to ART, misrepresenting the performance of ART, falsely advertising that ART would deliver high rates of return and failing to include a disclosure that Fintech and ART's forex trading performance results were largely or entirely based on simulated or hypothetical performance and not actual trading results as required by the relevant Regulation.

68.     Each false or misleading advertisement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R § 4.41(a).

## Count VI

### Violations of Regulation 4.41(b), 17 C.F.R. § 4.41(b) (2019)
### (Failure to Include Disclaimer Concerning Hypothetical Results)
### (Fintech, Friedland, and Compcoin LLC)

69.     Paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

70.     17 C.F.R § 4.41(b) prohibits any person from presenting the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest, or series of transactions in a commodity interest of a CTA, or any principal thereof, unless such performance is accompanied by the disclaimer contained in 17 C.F.R. § 4.41(b).

71.     Defendants Fintech, Friedland, and Compcoin LLC violated 17 C.F.R. § 4.41(b) by presenting the performance of the ART program in solicitation material, including but not limited to the Compcoin LLC website and social media sites, without the disclaimer required by 17 C.F.R. § 4.41(b) that the performance was based upon simulated or hypothetical trading results.

19

72.     Each failure of Defendants Fintech, Friedland, and Compcoin LLC to present the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest, or series of transactions in a commodity interest of a CTA or principal thereof without the disclaimer contained in 17 C.F.R. § 4.41(b), including but not limited to, those dates specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R. § 4.41(b).

## Count VII

**Aiding and Abetting Violations of Regulation 4.41(a),
17 C.F.R. § 4.41(a) (2019)
(False Advertising)
(Compcoin LLC)**

73.     Paragraphs 1 through 72 are re-alleged and incorporated herein by reference.

74.     17 C.F.R § 4.41(a) prohibits CTAs or any principal of a CTA from advertising in a manner which employs any device, scheme or artifice to defraud any participant or client or prospective participant or client or involves any transaction, practice or course of business which operates as a fraud or deceit upon any participant or client or prospective participant or client.

75.     During the Relevant Period, Defendants Fintech and Friedland advertised the ART trading system on the Compcoin LLC website and social media sites, among other places, to solicit customers in a manner that employed a device, scheme or artifice to defraud customers and prospective customers and engaged in a transaction, practice or course of business which operated as a fraud upon their customers and prospective customers by, among other things, falsely promising that Compcoin would allow customers to gain access to ART, misrepresenting the performance of ART, falsely advertising that ART would deliver high rates

of return and failing to include a disclosure that Fintech and ART's forex trading performance results were based on simulated or hypothetical performance and not actual trading results as required by the relevant Regulation.

76.    By reason of the conduct described above, Compcoin LLC willfully aided, abetted, counseled, commanded, induced, or procured the commission of the acts constituting violations of 17 C.F.R § 4.41(a) committed by Fintech and Friedland or acted in combination or concert with Fintech and Friedland in such violations and sought by its actions to make the violations succeed.  Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a) (2018), Compcoin LLC is therefore responsible as if it was a principal for Fintech's and Friedland's violations of 17 C.F.R § 4.41(a) during the Relevant Period.

77.    Each false or misleading advertisement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R § 4.41(a) for which Compcoin LLC is responsible as if it was a principal under Section 13(a) of the Act.

## VII.    RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to its own equitable powers, enter:

A.    An order finding that Defendants violated Sections 4b(a)(2)(A)-(C), 4*o*(1)(A) and (B), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6*o*(1)(A), (B), 9(1) (2018), and Regulations 4.41(a) and (b), 5.2(b)(1)-(3), and 180.1, 17 C.F.R. §§ 4.41(a), (b), 5.2(b)(1)-(3), 180.1 (2019);

B.    An order of permanent injunction prohibiting Defendants and any other person or entity associated with them, from engaging in conduct that violates 7 U.S.C.

§§ 6b(a)(2)(A)-(C), 6o(1)(A) and (B), and 9(1), and 17 C.F.R. §§ 4.41(a) and (b),

5.2(b)(1)-(3), and 180.1;

C.    An order of permanent injunction prohibiting Defendants and any successor

thereof, from, directly or indirectly:

    a.    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2018)), including, but not limited to, trading for themselves or others;

    b.    entering into any transactions involving commodity interests (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)),

    c.    having any commodity interests traded on their behalf;

    d.    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e.    soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    f.    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019); and

    g.    acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent, or any other officer or employee of any person or entity registered, exempted from registration or required to be registered with the Commission except as provided for 17 C.F.R. § 4.14(a)(9);

D.    An order requiring that Defendants, as well as any of their successors, disgorge to

any officer appointed or directed by the Court all benefits received including, but

not limited to, salaries, commissions, loans, fees, revenues and trading profits

derived, directly or indirectly, from acts or practices that constitute violations of

the Act, as amended, and the Regulations, including pre- and post-judgment

interest;

E.      An order directing Defendants, as well as any successors thereof, to make full

restitution, pursuant to such procedure as the Court may order, to every customer

whose funds Defendants received, or caused another person or entity to receive,

as a result of the acts and practices constituting violations of the Act and

Regulations, as described herein, and pre- and post-judgment interest thereon

from the date of such violations;

F.      An order requiring Defendants to pay civil monetary penalties under the Act, to

be assessed by the Court, in amounts not to exceed the penalties prescribed by

7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil

Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-

74, tit. VII, § 701, 129 Stat. 584, 599, see 17 C.F.R. § 143.8 (2019), for each

violation of the Act and Regulations described herein;

G.      An order requiring Defendants to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2412(a)(2) (2018); and

H.      An order providing such other and further relief as this Court may deem necessary

and appropriate.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.


Dated April 16, 2020                            Respectfully submitted,

                                               COMMODITY FUTURES
                                               TRADING COMMISSION

                                               By: /s/ Janine Gargiulo
                                               Janine Gargiulo (Trial Counsel) (appearing
                                               pursuant to Local Rule 2.02(b))
                                               Gabriella Geanuleas (appearing pursuant to
                                               Local Rule 2.02(b))
                                               K. Brent Tomer (appearing pursuant to
                                               Local Rule 2.02(b))

                                               Commodity Futures Trading Commission
                                               Division of Enforcement
                                               140 Broadway, 19th Floor
                                               New York, NY 10005
                                               Phone: (646) 746-9730
                                               Fax: (646) 746-9940
                                               jgargiulo@cftc.gov


                                               ATTORNEYS FOR PLAINTIFF
                                               COMMODITY FUTURES TRADING
                                               COMMISSION