# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

COMMODITY FUTURES TRADING
COMMISSION,
      **Plaintiff,**

    v.

FINTECH INVESTMENT GROUP,
INC., COMPCOIN LLC and ALAN
FRIEDLAND,
      **Defendants.**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**Case No: 6:20-cv-652-Orl-WWB-EJK**

## CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST FINTECH INVESTMENT GROUP, INC., COMPCOIN LLC and ALAN FRIEDLAND

### I.    INTRODUCTION

On April 16, 2020, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants Fintech Investment Group, Inc. ("Fintech"), Compcoin LLC and Alan Friedland ("Friedland") (collectively "Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190.

### II.    CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants without a complete trial on the merits or any further judicial proceedings, Defendants Fintech, Compcoin LLC and Friedland:

1.    Consent to the entry of this Consent Order for Permanent Injunction, Civil
Monetary Penalty, and Other Equitable Relief Against Fintech Investment Group, Inc.,
Compcoin LLC and Alan Friedland ("Consent Order");

2.    Consent to the entry of this Consent Order without admitting or denying
the allegations of the Complaint or any findings or conclusions in this Consent Order,
except as to jurisdiction and venue, which they admit;

3.    Affirm that they read and agreed to this Consent Order voluntarily, and
that no promise, other than as specifically contained herein, or threat, has been made
by the Commission or any member, officer, agent, or representative thereof, or by any
other person, to induce consent to this Consent Order;

4.    Acknowledge service of the summons and Complaint;

5.    Admit the jurisdiction of this Court over them and the subject matter of this
action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

6.    Admit the jurisdiction of the Commission over the conduct and
transactions at issue in this action pursuant to the Act;

7.    Admit that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-
1(e);

8.    Waive:

(a)    Any and all claims that they may possess under the Equal Access
to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012),
and/or the rules promulgated by the Commission in conformity
therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2018),
relating to, or arising from, this action;

(b)    Any and all claims that they may possess under the Small Business
Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-
121, tit. II, §§ 201–53, 110 Stat. 847, 857–74 (codified as amended

at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15
U.S.C.), relating to, or arising from, this action;

(c)     Any claim of Double Jeopardy based upon the institution of this
action or the entry in this action of any order imposing a civil
monetary penalty or any other relief, including this Consent Order;
and

(d)     Any and all rights of appeal from this action;

9.     Consent to the continued jurisdiction of this Court over them for the

purpose of implementing and enforcing the terms and conditions of this Consent Order

and for any other purpose relevant to this action, even if Defendants now or in the future

reside outside the jurisdiction of this Court;

10.     Agree that they will not oppose enforcement of this Consent Order on the

ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil

Procedure and hereby waives any objection based thereon;

11.     Agree that neither they nor any of their agents or employees under their

authority or control shall take any action or make any public statement denying, directly

or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of

Law in this Consent Order, or creating or tending to create the impression that the

Complaint and/or this Consent Order is without a factual basis; provided, however, that

nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take

legal positions in other proceedings to which the Commission is not a party.

Defendants shall comply with this agreement, and shall undertake all steps necessary

to ensure that all of their agents and/or employees under their authority or control

understand and comply with this agreement;

3

12.    Consent to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

13.    Do not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a: statutory disqualification proceeding; proceeding in bankruptcy, or receivership; or proceeding to enforce the terms of this Order;

14.    Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 68 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against any of them, whether inside or outside the United States; and

15.    Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants in any other proceeding.

## III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.    Findings of Fact**

**The Parties to this Consent Order**

16.    Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

17.    Defendant Alan Friedland is the founder and sole owner of Fintech and Compcoin LLC. During the Relevant Period, Friedland controlled and directed the activities of Fintech and Compcoin LLC. Friedland was an officer, employee, and agent of Fintech, and in those capacities, he solicited Fintech customers' and prospective customers' discretionary accounts. Friedland is the listed Principal of Fintech and is registered with the Commission as an associated person thereof.

18.    Defendant Fintech Investment Group, Inc. was a Florida company during the Relevant Period and used as a mailing address 100 E. New York Ave, Suite 330, Deland, FL 32724. Fintech was established as a corporation on March 29, 2016, and was dissolved on September 27, 2019. At all times since 2016, Fintech has been registered with the Commission as a commodity trading advisor.

19.    Defendant Compcoin LLC was a Florida limited liability company during the Relevant Period and used as a mailing address 100 E. New York Ave, Suite 335, Deland, FL 32724. Compcoin LLC was formed as a limited liability company on June 4, 2015, and dissolved on September 27, 2019. Compcoin LLC has never been registered with the Commission.

**Defendants' Forex Solicitations and Misrepresentations**

20.    From at least 2016 through 2018 (the "Relevant Period"), Friedland and the companies he controlled, Fintech and Compcoin LLC, fraudulently solicited customers and prospective customers to purchase the digital asset known as Compcoin ("Compcoin"), falsely promising that Compcoin would allow customers to gain access to Fintech's allegedly proprietary foreign exchange ("forex") trading algorithm known as ART and falsely advertising that ART would deliver high rates of return.  In 2017 and 2018, after selling Compcoin to customers, Defendants sought, but did not receive, NFA approval to provide the ART trading program to customers.

21.    Defendants marketed Compcoin as "[a]n incentivized blockchain-based Financial Investment Coin" by which "Compcoin owners will measure its value through the performance (actual and perceived future sustainability) of its automated, algorithmic trading platform," known as ART.

22.    In order for Defendants' customers to gain access to ART, customers were required to first purchase Compcoin. Customers could purchase Compcoin directly from other purchasers of Compcoin through an authorized digital asset exchange, or—as was the case for many Compcoin holders—directly from Compcoin LLC, an affiliate of Fintech which was wholly owned by Friedland. Customers were then supposed to hold Compcoin at an address specified by Fintech on the public Compcoin blockchain. According to Fintech, once it confirmed that the customer posted Compcoin to the designated address on the blockchain, Fintech would then trade the customer's individual forex account using ART. This never happened.

23.    Defendants solicited customers to purchase Compcoin through various means, including a white paper posted to Compcoin LLC's website, other statements on the website, written solicitation materials, paid press releases, and verbal communications.

24.    Defendants' white paper was replete with statements such as the following:

(a) Compcoin could be used as "tokens" to gain access to "sophisticated, A.I.-enhanced trading technologies."

(b) "[T]he primary function of Compcoin is to grant investors access to ART – a proprietary, automated, algorithmic foreign currency exchange (forex) trading platform developed by Fintech Investment Group" that is "complete in form and function."

(c) After more than eight years of testing, ART "is likely to deliver a return on investment (ROI). As such, Compcoin's founders felt the technology was ready for release on the open market."

(d) "ART's high success rate at predicting USD/EUR [i.e., U.S. dollar/euro] forex trades, coupled with the high rate of return from these trades, will stimulate demand among investors and forex traders to purchase and use Compcoin- specifically to gain access to ART."

(e) "In eight years of controlled lab testing, Compcoin delivered an average 10%* quarterly return on investment (ROI) – much higher than the ROI of most retail and institutional forex traders." The asterisk referred to a footnote, which in smaller print, read "*NOTE Preliminary performance results were

primarily achieved in a controlled environment using historical trading data measured against actual forex trading results. It is important to note past results are not an indicator of future performance."

25.    Defendants solicited customers to utilize ART in connection with retail forex trading on a margined or leveraged basis, listing on the Compcoin LLC website various forex trading platforms that were compatible with the ART technology and including the amount of leverage that could be utilized in trading on each platform.

26.    Defendants solicited customers who were not eligible contract participants, as that term is defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18).

27.    During the Relevant Period, Defendants sold Compcoin to hundreds of customers through Defendant Compcoin LLC.

**Defendants' Fraud**

28.    Defendants' solicitation representations, set forth above, were untrue and materially misleading. Defendants made these false and misleading representations of material fact knowingly or recklessly in that they knew that these statements were false or misleading.

29.    Prior to the purchase of Compcoin by anyone, Defendants knew that Compcoin could not be used by customers to gain access to ART because Fintech had not been approved to advise customers as to trading forex using ART.

30.    Defendants also knew that ART could not lawfully automatically manage any customer accounts because Defendants knew that before Fintech could lawfully offer ART to purchasers of Compcoin, Fintech was required to seek and obtain the approval of its risk disclosure documents from the NFA.  This approval never happened.

Defendants offered Compcoin prior to Fintech seeking NFA approval of its disclosure documents, and Fintech never obtained NFA approval of the disclosure documents. After the Compcoin ICO, Defendants sought NFA approval of the disclosure document, and submitted approximately a dozen versions of the disclosure document to the NFA, but never received approval on account of a number of concerns the NFA had with the different iterations of the document.

31.    Compcoin LLC's website did not contain an NFA approved risk disclosure statement for ART because the NFA never approved Fintech's risk disclosure documents for ART.  Compcoin was not a member of the NFA.

32.    Regulation 4.36, 17 C.F.R. § 4.36 (2021), requires that a CTA "must electronically file with the National Futures Association, pursuant to the electronic filing procedures of the National Futures Association, the Disclosure Document for each trading program that it offers or intends to offer not less than 21 calendar days prior to the date the trading advisor intends to deliver the Document to a prospective client in the trading program." In practice, this Regulation allows the NFA to review the solicitation and require the CTA to make any necessary changes prior to solicitation. It also affords the NFA with the opportunity to reject inadequate disclosures in advance of any solicitation and withhold approval of a Disclosure Document that does not conform with the NFA Rules or CFTC Regulations.  The NFA's website makes clear to all CTAs and prospective CTAs that a Disclosure Document may not be used unless and until the CTA receives an acceptance letter.

33.     Defendants knew that Compcoin could not lawfully be used by customers
to trade forex with ART unless and until the NFA approved the disclosure statement by
issuing an acceptance letter.

34.     From approximately September 2017 to May 2018, during the period in
which the Defendants sought NFA approval of the disclosure document, the NFA
advised Defendant Fintech in writing that the forex trading disclosure documents, which
Fintech had submitted to the NFA for approval, were deficient and could not be used to
solicit customers for forex trading using ART until acceptable disclosures were filed
with, approved and accepted by the NFA. Defendant Fintech was advised in writing that
soliciting customers with disclosures that were not accepted by the NFA "will result in
violations of NFA Rules and CFTC Regulations and could subject the firm to possible
disciplinary action."

35.     The NFA never issued an acceptance letter.

36.     Further, although Defendants touted the successful performance of ART
through the Compcoin LLC website and in advertising materials, Defendants knew that
the performance of ART which was included in Defendants' website and solicitations
was based largely or entirely on hypothetical performance results, not real trading, and
further knew that the Compcoin LLC website and solicitations did not contain the
required disclaimer for simulated or hypothetical performance set out in Regulation
4.41(b), 17 C.F.R. § 4.41(b) (2021).

37.     Instead of gaining access to ART's high success rate at predicting
USD/EUR forex trades and high rate of return from the trades as promised, purchasers
of Compcoin were left with a valueless asset. The NFA never approved Fintech's risk

disclosure statements. The purchasers of Compcoin never gained access to ART.

Indeed, Compcoin was eventually delisted by all digital asset exchanges and is now

worthless.

**B.    Conclusions of Law**

**Jurisdiction and Venue**

38.    This Court possesses jurisdiction over this action pursuant to 28 U.S.C. §

1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S.

district courts have original jurisdiction over civil actions commenced by the United

States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a)

of the Act, 7 U.S.C. § 13a-1(a), provides that the Commission may bring actions for

injunctive relief or to enforce compliance with the Act or any rule, regulation, or order

thereunder in the proper district court of the United States whenever it shall appear to

the Commission that any person has engaged, is engaging, or is about to engage in any

act or practice constituting a violation of any provision of the Act or any rule, regulation,

or order thereunder.  The Commission has jurisdiction over the forex solicitations and

transactions at issue pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C).

39.    Venue lies properly in this District pursuant to 7 U.S.C. § 13a-1(e),

because Defendants transacted business in this District and certain transactions, acts,

practices, and courses of business alleged in this Complaint occurred within this District.

**Forex Fraud**

40.    By the conduct described in paragraphs 1 through 37 above, Defendants,

in connection with retail forex transactions, knowingly or recklessly: cheated or

defrauded, or attempted to cheat or defraud customers and prospective customers and

deceived, or attempted to deceive customers and prospective customers by, among other things, fraudulently soliciting customers and prospective customers to purchase Compcoin, falsely promising that Compcoin would allow customers to gain access to ART, falsely advertising that ART would deliver high rates of return and failing to include the required disclosure that Fintech and ART's forex trading performance results were largely or entirely based on simulated or hypothetical performance and not actual trading results as required by the relevant Regulation.

41.    By reason of the foregoing, Defendants violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

**Fraud by a Commodity Trading Advisor**

42.    By the conduct described in paragraphs 1 through 37 above, Defendants Friedland and Fintech, through use of the mails or other means or instrumentalities of interstate commerce, including the Compcoin LLC website, employed a device, scheme or artifice to defraud their customers and prospective customers and engaged in a transaction, practice or course of business which operated as a fraud upon their customers and prospective customers by, among other things, fraudulently soliciting customers and prospective customers to purchase Compcoin, falsely promising that Compcoin would allow customers to gain access to ART, falsely advertising that ART would deliver high rates of return and failing to include the required disclosure that Fintech and ART's forex trading performance results were largely or entirely based on simulated or hypothetical performance and not actual trading results as required by the relevant Regulation.

43.     By reason of the foregoing, Defendants Fintech and Friedland violated 7 U.S.C. § 6o(1)(A) and (B).

**Aiding and Abetting Fraud by a Commodity Trading Advisor**

44.     By the conduct described in paragraphs 1 through 37 above, Defendant Compcoin LLC willfully aided, abetted, counseled, commanded, induced, or procured the commission of the acts constituting violations of 7 U.S.C. § 6o(1)(A) and (B) of the Act committed by Fintech and Friedland or acted in combination or concert with Fintech and Friedland in such violations, and Compcoin LLC sought by its actions to make Fintech's and Freedland's violations succeed. Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Compcoin LLC is therefore responsible as if it was a principal for Fintech's and Friedland's violations of 7 U.S.C. § 6o(1)(A) and (B) during the Relevant Period.

**Fraud in Violation of Section 6(c) and Regulation 180.1**

45.     By the conduct described in paragraphs 1 through 37 above, Defendants, directly or indirectly, in connection with retail forex offered on a margined or leveraged basis to people who are not eligible contract participants, intentionally or recklessly: (1) used or employed, or attempted to use or employ, manipulative devices, schemes, or artifices to defraud; (2) made, or attempted to make, untrue or misleading statements of a material fact or omitted to state material facts necessary in order to make the statements made not untrue or misleading; or (3) engaged, or attempted to engage, in acts, practices, or courses of business, which operated or would have operated as a fraud or deceit upon customers or prospective customers.

46.    Defendants made false and misleading misrepresentations of material
fact, including but not limited to: falsely promising that Compcoin would allow customers
to gain access to ART, misrepresenting the performance of ART, falsely advertising that
ART would deliver high rates of return and failing to include a disclosure that Fintech
and ART's forex trading performance results were largely or entirely based on simulated
or hypothetical performance and not actual trading results as required by the relevant
Regulation.

47.    By reason of the foregoing, Defendants violated 7 U.S.C. § 9(1) and 17
C.F.R. § 180.1.

**False Advertising by a CTA**

48.    By the conduct described in paragraphs 1 through 37 above, Defendants
Fintech and Friedland advertised the ART forex trading system on the Compcoin LLC
website and social media sites, among other places, to solicit customers in a manner
that employed a device, scheme or artifice to defraud customers and prospective
customers and engaged in a transaction, practice or course of business which operated
as a fraud upon their customers and prospective customers by, among other things,
falsely promising that Compcoin would allow customers to gain access to ART,
misrepresenting the performance of ART, falsely advertising that ART would deliver
high rates of return and failing to include a disclosure that Fintech and ART's forex
trading performance results were largely or entirely based on simulated or hypothetical
performance and not actual trading results as required by the relevant Regulation.

49.    By reason of the foregoing, Defendants Fintech and Friedland violated 17
C.F.R § 4.41(a).

**Failure to Include Disclaimer Concerning Hypothetical Results**

50.     By the conduct described in paragraphs 1 through 37 above, Defendants presented the performance of the ART program in solicitation material, including but not limited to the Compcoin LLC website and social media sites, without the disclaimer required by 17 C.F.R. § 4.41(b) that the performance was based upon simulated or hypothetical trading results.

51.     By reason of the foregoing, Defendants violated 17 C.F.R. § 4.41(b).

**Aiding and Abetting False Advertising Violation**

52.     By the conduct described in paragraphs 1 through 37 above, Defendant Compcoin LLC willfully aided, abetted, counseled, commanded, induced, or procured the commission of the acts constituting violations of 17 C.F.R § 4.41(a) committed by Fintech and Friedland or acted in combination or concert with Fintech and Friedland in such violations and sought by its actions to make the violations succeed.  Pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Compcoin LLC is therefore responsible as if it was a principal for Fintech's and Friedland's violations of 17 C.F.R § 4.41(a) during the Relevant Period.

53.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

54.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendants are permanently restrained, enjoined and prohibited from directly or indirectly:

a.    Engaging in conduct violating 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3), including cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person in connection with any offering of an automated forex trading program, forex algorithm or similar forex product.

b.    Engaging in conduct violating 7 U.S.C. § 6o(1)(A) and (B), including, while registered or acting as a CTA, employing a device, scheme or artifice to defraud, or engaging in a transaction, practice or course of business which operates as a fraud upon customers or prospective customers in connection with any offering of an automated forex trading program, forex algorithm or similar forex product.

c.    Engaging in conduct violating, violating 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1, including, directly or indirectly, in connection retail forex offered on a margined or leveraged basis to people who are not eligible contract participants, intentionally or recklessly: (1) using or employing, or attempting to use or employ, manipulative devices, schemes, or artifices

to defraud; (2) making, or attempting to make, untrue or misleading statements of a material fact or omitted to state material facts necessary in order to make the statements made not untrue or misleading; or (3) engaging, or attempting to engage, in acts, practices, or courses of business, which operate or would operate as a fraud or deceit upon customers or prospective customers, in connection with any offering of an automated forex trading program, forex algorithm or similar forex product.

d.    Engaging in conduct violating 17 C.F.R § 4.41(a), including, while registered or acting as a CTA, soliciting customers in a manner that employs a device, scheme or artifice to defraud customers and prospective customers, or engaging in a transaction, practice or course of business which operates as a fraud upon their customers and prospective customers, in connection with any offering of an automated forex trading program, forex algorithm or similar forex product.

e.    Engaging in conduct violating 17 C.F.R. § 4.41(b), including any person presenting solicitation material containing simulated or hypothetical results without the disclaimer required by 17 C.F.R. § 4.41(b) that performance is based upon simulated or hypothetical trading results, in connection with any offering of an automated forex trading program, forex algorithm or similar forex product.

55.    Defendants are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.   Trading on or subject to the rules of any registered entity (as that term is
     defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

b.   Entering into any transactions involving "commodity interests" (as that term
     is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021), for their own personal
     account or for any account in which they have a direct or indirect interest;

c.   Having any commodity interests traded on their behalf;

d.   Controlling or directing the trading for or on behalf of any other person or
     entity, whether by power of attorney or otherwise, in any account involving
     commodity interests;

e.   Soliciting, receiving or accepting any funds from any person for the
     purpose of purchasing or selling any commodity interests;

f.   Applying for registration or claiming exemption from registration with the
     Commission in any capacity, and engaging in any activity requiring such
     registration or exemption from registration with the Commission, except as
     provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and/or

g.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17
     C.F.R. § 3.1(a) (2021)), agent or any other officer or employee of any
     person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted
     from registration or required to be registered with the Commission except
     as provided for in 17 C.F.R. § 4.14(a)(9).

## V.    RESTITUTION AND CIVIL MONETARY PENALTY

### A.    Restitution

56.    Defendants shall pay, jointly and severally, restitution in the amount of one

million, two hundred thousand ($1,200,000) ("Restitution Obligation").  If the Restitution

Obligation is not paid immediately, post-judgment interest shall accrue on the

Restitution Obligation beginning on the date of entry of this Consent Order and shall be

determined by using the Treasury Bill rate prevailing on the date of entry of this Consent

Order pursuant to 28 U.S.C. § 1961 (2012).

57.    To effect payment of the Restitution Obligation and the distribution of any

restitution payments to Defendants' customers, the Court appoints the National Futures

Association ("NFA") as Monitor ("Monitor").  The Monitor shall receive restitution

payments from Defendants and make distributions as set forth below.  Because the

Monitor is acting as an officer of this Court in performing these services, the NFA shall

not be liable for any action or inaction arising from NFA's appointment as Monitor, other

than actions involving fraud.

58.    Defendants shall make Restitution Obligation payments, and any post-

judgment interest payments, under this Consent Order to the Monitor in the name

"Fintech Restitution Fund" and shall send such payments by electronic funds transfer, or

by U.S. postal money order, certified check, bank cashier's check, or bank money order,

to the Office of Administration, National Futures Association, 300 South Riverside

Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying

Defendants and the name and docket number of this proceeding.  Defendants shall

simultaneously transmit copies of the cover letter and the form of payment to the Chief

Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre,

1155 21st Street, NW, Washington, D.C. 20581.   Copies should also be simultaneously

transmitted to Manal Sultan, Deputy Direct, Division of Enforcement, Commodity

Futures Trading Commission, 140 Broadway, 19th Floor, New York, NY 10005, before

March 11, 2022, and after March 11, 2022, to Manal Sultan, Deputy Director,

Commodity Futures Trading Commission, 290 Broadway, 6th Floor, New York, NY

10007.

59.    The Monitor shall oversee the Restitution Obligation and shall have the

discretion to determine the manner of distribution of such funds in an equitable fashion

to Defendants' customers identified by the Commission or may defer distribution until

such time as the Monitor deems appropriate.  In the event that the amount of Restitution

Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor

determines that the administrative cost of making a distribution to eligible customers is

impractical, the Monitor may, in its discretion, treat such restitution payments as civil

monetary penalty payments, which the Monitor shall forward to the Commission

following the instructions for civil monetary penalty payments set forth in Part V.B below.

60.    Defendants shall cooperate with the Monitor as appropriate to provide

such information as the Monitor deems necessary and appropriate to identify

Defendants' customers to whom the Monitor, in its sole discretion, may determine to

include in any plan for distribution of any Restitution Obligation payments.  Defendants

shall execute any documents necessary to release funds that they may have in any

repository, bank, investment or other financial institution, wherever located, in order to

make partial or total payment toward the Restitution Obligation.

61.    The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' customers during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

62.    The amounts payable to each customer shall not limit the ability of any customer from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

63.    Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defendants, excluding Alan Friedland, his immediate family, and employees of Compcoin LLC and Fintech Investment Group, Inc., who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendants to ensure continued compliance with any provision of this Consent Order and to hold Defendants in contempt for any violations of any provision of this Consent Order.

64.    To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.    Civil Monetary Penalty**

65.    Defendants shall pay, jointly and severally, a civil monetary penalty in the
amount of six hundred thousand ($600,000) ("CMP Obligation").  If the CMP Obligation
is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation
beginning on the date of entry of this Consent Order and shall be determined by using
the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to
28 U.S.C. § 1961 (2012).

66.    Defendants shall pay their CMP Obligation and any post-judgment
interest, by electronic funds transfer, U.S. postal money order, certified check, bank
cashier's check, or bank money order.  If payment is to be made other than by
electronic funds transfer, then the payment shall be made payable to the Commodity
Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Tonia King
or her successor at the address above to receive payment instructions and shall fully
comply with those instructions.  Defendants shall accompany payment of the CMP
Obligation with a cover letter that identifies Defendants and the name and docket
number of this proceeding.  Defendants shall simultaneously transmit copies of the
cover letter and the form of payment to the Chief Financial Officer, Commodity Futures

Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C.

20581. Copies should also be simultaneously transmitted to Manal Sultan, Deputy

Direct, Division of Enforcement, Commodity Futures Trading Commission, 140

Broadway, 19th Floor, New York, NY 10005, before March 11, 2022, and after March 11,

2022, to Manal Sultan, Deputy Director, Commodity Futures Trading Commission, 290

Broadway, 6th Floor, New York, NY 10007.

**C.    Provisions Related to Monetary Sanctions**

67.    Partial Satisfaction:  Acceptance by the Commission/CFTC or the Monitor

of any partial payment of Defendants' Restitution Obligation or CMP Obligation shall not

be deemed a waiver of their obligation to make further payments pursuant to this

Consent Order, or a waiver of the Commission/CFTC's right to seek to compel payment

of any remaining balance.

## VI.    MISCELLANEOUS PROVISIONS

68.    Until such time as all Defendants satisfy in full their CMP and Restitution

obligations under this Consent Order, upon the commencement by or against any

Defendant of insolvency, receivership or bankruptcy proceedings or any other

proceedings for the settlement of any Defendant's debts, all notices to creditors required

to be furnished to the Commission under Title 11 of the United States Code or other

applicable law with respect to such insolvency, receivership bankruptcy or other

proceedings, shall be sent to the address below:

        Secretary of the Commission
        Legal Division
        Commodity Futures Trading Commission
        Three Lafayette Centre
        1155 21st Street N.W.

Washington, DC 2058

69.    Notice:  All notices required to be given by any provision in this Consent

Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Before March 11, 2022:
> Manal Sultan
> Deputy Director
> Division of Enforcement
> Commodity Futures Trading Commission
> 140 Broadway, 19th Floor
> New York, NY 10005
> Phone:  646-746-9761
> Email:  msultan@cftc.gov
>
> After March 11, 2022:
> Manal Sultan
> Deputy Director
> Division of Enforcement
> Commodity Futures Trading Commission
> 290 Broadway, 6th Floor
> New York, NY 10007

Notice to Defendants:

> Joshua A.  Cossey
> Sentinel Law, P.A.
> 301 W. Bay St., Ste. 14106
> Jacksonville, FL 32202
> Phone: 800-484-6406
> Email: joshuac@sentinellaw.com

All such notices to the Commission shall reference the name and docket number of this

action.

70.    Change of Address/Phone:  Until such time as Defendants satisfy in full

their Restitution Obligation and CMP Obligation as set forth in this Consent Order,

Defendants shall provide written notice to the Commission by certified mail of any

change to his telephone number and mailing address within ten calendar days of the change.

71.    Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

72.    Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

73.    Waiver:  The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

74.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Consent Order.

75.    Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

76.    Authority:  Defendant Alan Friedland hereby warrants that he is the owner of Fintech and Compcoin LLC, and that this Consent Order has been duly authorized by Fintech and Compcoin LLC and he has been duly empowered to sign and submit this Consent Order on behalf of Fintech and Compcoin LLC.

77.    Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

78.    Contempt:  Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

79.    Agreements and Undertakings:  Defendants shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to

enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other*

*Equitable Relief Against Fintech Investment Group, Inc., Compcoin, LLC and Alan*

*Friedland* forthwith and without further notice.


**IT IS SO ORDERED** on this _____day of _____, 2022.


_____
Wendy W. Berger
United States District Judge



CONSENTED TO AND APPROVED BY:


_____
Alan Friedland on behalf of Compcoin
LLC and Fintech Investment Group, Inc.

Date: _3 - 3 - 2022_

_____
Alan Friedland, individually

Date: _3 . 3 - 2022_


Approved as to form:

_____
Joshua A. Cossey
Attorney for Compcoin LLC and Fintech
Investment Group, Inc.

_____
Gabriella Geanuleas
Janine Gargiulo
Katie Rasor
Jacob Mermelstein
K. Brent Tomer
Manal Sultan
Commodity Futures Trading Commission
140 Broadway, 19th Floor
646-746-9761
msultan@cftc.gov


Dated _____

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Fintech Investment Group, Inc., Compcoin, LLC and Alan Friedland* forthwith and without further notice.


**IT IS SO ORDERED** on this _____ day of _____, 2022.


_____
Wendy W. Berger
United States District Judge


CONSENTED TO AND APPROVED BY:


_____
Alan Friedland on behalf of Compcoin
LLC and Fintech Investment Group, Inc.

Date: _____


_____
Alan Friedland, individually

Date: _____


Approved as to form:

_____
Joshua A. Cossey
Attorney for Compcoin LLC and Fintech
Investment Group, Inc.


_____
Gabriella Geanuleas
Janine Gargiulo
Katie Rasor
Jacob Mermelstein
K. Brent Tomer
Manal Sultan
Commodity Futures Trading Commission
140 Broadway, 19th Floor
646-746-9761
msultan@cftc.gov

Dated _3/1/22_____

27

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Fintech Investment Group, Inc., Compcoin, LLC and Alan Friedland* forthwith and without further notice.

**IT IS SO ORDERED** on this _____day of _____, 2022.

_____
Wendy W. Berger
United States District Judge

CONSENTED TO AND APPROVED BY:

_____
Alan Friedland on behalf of Compcoin
LLC and Fintech Investment Group, Inc.

Date: _____

_____
Alan Friedland, individually

Date: _____

Approved as to form:

_____
Joshua A. Cossey
Attorney for Compcoin LLC and Fintech
Investment Group, Inc.

_____
Gabriella Geanuleas
Janine Gargiulo
Katie Rasor
Jacob Mermelstein
K. Brent Tomer
Manal Sultan
Commodity Futures Trading Commission
140 Broadway, 19th Floor
646-746-9761
msultan@cftc.gov

Dated _____3/7/22_____